An order of dismissal in accordance with this Memorandum and Order is separately entered.

### DISMISSAL ORDER

In accordance with the Memorandum and Order entered this same date,

**IT IS HEREBY ORDERED** that this action is **dismissed,** pursuant to Fed. R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction.

Jennifer A. INGRAM, Plaintiff,

v.

**MUTUAL OF OMAHA INSURANCE COMPANY, Defendant.**

**No. 01–0308–CV–W–3–ECF.**

United States District Court, W.D. Missouri, Western Division.

Oct. 26, 2001.

Dale Lee Ingram, Jolley Walsh Hurley & Raisher, P.C., Kansas City, MO, for plaintiff.

Sara J. Kagay, Lathrop & Gage LC, Kansas City, MO, Robert W. McKinley, Lathrop & Gage, LC, Kansas City, MO, for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

SMITH, District Judge.

Pending are the Motion for Partial Summary Judgment of Plaintiff (Doc. # 12) and the Cross–Motion for Summary Judgment of Defendant (Doc. # 22). For the reasons set forth below, Plaintiff's motion is granted and Defendant's motion is granted in part and denied in part.

## I. Background

This case arises from Plaintiff's claims against her medical insurance company for breach of fiduciary duty and breach of the physician-patient privilege. The uncontroverted facts are as follows: Plaintiff ("Ingram") was identified as a potential witness in an unrelated case entitled *Walton v. American Delivery Service* ("the *Walton* case"). The *Walton* case, which has now settled, was pending in Wyandotte County, Kansas District Court. On or about February 7, 2000, J. Donald Lysaught, the defense attorney in the *Walton* case, subpoenaed Ingram's medical records from Defendant ("Mutual of Omaha"), her medical insurance carrier. The subpoena directed Mutual of Omaha to either produce the documents at Lysaught's law firm office on February 23, 2000, or if Mutual of Omaha was unable to produce the records on that date, to file the records with the Clerk of the Wyandotte County Court. On February 24, 2000, Mutual of Omaha mailed Ingram's medical records to Lysaught's firm. Ingram did not authorize or consent to the release of her medical records. Further, Mutual of Omaha did not inform her that it had disclosed her medical records. On June 6, 2000, the Plaintiff in the *Walton* case moved to quash all subpoenas of business records regarding Ingram, including the subpoena issued to Mutual of Omaha. Shortly thereafter, Dr. Mark Molos, a treating physician to Ingram, also filed a motion to quash a subpoena he received requesting Ingram's medical records. The Kansas court overruled both motions without par-

ticipation by Ingram, holding that the information requested in the subpoenas was reasonably calculated to lead to the discovery of admissible evidence.

Ingram alleges that Defendant Mutual of Omaha breached its fiduciary duty and the physician-patient privilege when it disclosed her confidential medical records to a third party; however, she is only seeking summary judgment on her breach of fiduciary duty claim. Mutual of Omaha argues that it properly complied with a valid subpoena, that it owed no fiduciary duty to Ingram and is seeking summary judgment on all of Ingram's claims. Ingram contends that, instead of disclosing her medical records without her waiver or authorization, Mutual of Omaha should have either objected to the subpoena or filed a motion to quash the subpoena. Therefore, Ingram's claim is best stated as a claim for breach of fiduciary duty and the physician-patient privilege for failing to object to or file a motion to quash the subpoena. The central issue in this case is whether the failure to object or file a motion to quash is a breach of Defendant's fiduciary duty and a breach of the physician-patient privilege.

## II. Standard

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir.1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Get Away Club, Inc. v. Coleman*, 969 F.2d 664 (8th

Cir.1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir.1984), *cert. denied*, 470 U.S. 1057, 105 S.Ct. 1767, 84 L.Ed.2d 828 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the ... pleadings, but ... by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

## III. Choice of Law

██ The parties have engaged in a lengthy discussion about which state law should be applied. Ingram contends that Missouri law should be applied, as the relationship between the parties is centered in Missouri and Missouri has the greatest concern because the outcome of the case will affect the privacy of Missouri citizens' medical records. Mutual of Omaha argues that Kansas law should be applied because, among other things, the medical records were produced in Kansas and Kansas has the greatest interest in the case because the outcome will affect how entities respond to subpoenas issued by Kansas courts. In determining which state's substantive law governs, a district court must apply the forum state's conflict of law rules. *See Pritchard–Keang Nam Corp. v. Jaworski*, 751 F.2d 277, 281 n. 4 (8th Cir.1984). In the past, Missouri has looked to the Restatement to provide guidance on its conflict of law questions. *See Farmers Ins. Co. v. McFarland*, 976 S.W.2d 559 (Mo.Ct.App.1998) (stating that Missouri has adopted "significant relation-

ship" test of Restatement § 145). Section 145 of the Restatement (Second) provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence . . . .
> (2) Contacts to be taken into account. . . to determine the law applicable to an issue include:
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

In this case, the parties are asking the Court to determine whether a fiduciary duty exists between the insurer and its insured. Thus, the key issue is focused on the relationship between Ingram and Mutual of Omaha. Although the medical records were produced in Kansas pursuant to a subpoena issued by a Kansas court for use in a Kansas court proceeding, this case deals with the nature of the relationship between the parties. The insured was a Kansas resident at the time the insurance agreement was signed, but is now domiciled in Missouri and was domiciled in Missouri at the time the records were released. The insurance company is a Nebraska corporation. The relationship between the parties is now centered in Missouri, arguably Nebraska, but not Kansas. Furthermore, the outcome of this proceeding will affect not only a Missouri citizen's privacy interest in her medical records but also the extent of the fiduciary duty an insurance company owes to parties that it insures in the state of Missouri. Taking all of the above into consideration, the Court believes that Missouri has the most significant relationship to the legal issue in dispute; therefore, Missouri law will be applied.

## IV. Analysis

### A. Breach of Fiduciary Duty

■ Under Missouri law, Mutual of Omaha was in possession of Ingram's privileged medical records and there is no evidence that she either waived her privilege or authorized their disclosure. *See Gonzenbach v. Eberwein*, 655 S.W.2d 794 (Mo.Ct.App.1983) (holding that a patient's act of turning medical records over to his insurance company was not a waiver of his physician-patient privilege). However, simply because Mutual of Omaha was in possession of privileged records does not resolve the pivotal question of whether the insurance company's disclosure of physician-patient privileged medical records constituted a breach of a fiduciary duty. In *Brandt v. Medical Defense Associates*, 856 S.W.2d 667 (Mo. banc 1993), the Missouri Supreme Court held that a physician's disclosure of privileged medical records constitutes a breach of his fiduciary duty. The court stated, "a physician occupies a position of trust and confidence as regards his patient—a fiduciary position" and from this fiduciary relationship arises a duty of confidentiality not to disclose any medical information received in connection with his treatment. *Id.* at 670 (quoting *Moore v. Webb*, 345 S.W.2d 239, 243 (Mo. Ct.App.1961)). The Missouri courts have extended this fiduciary duty of confidentiality to health care centers and hospitals. *Fierstein v. DePaul Health Ctr.*, 949 S.W.2d 90 (Mo.Ct.App.1997). Plaintiff advocates now extending this fiduciary duty of confidentiality to insurance companies.

■ Although there are no Missouri cases that have extended the fiduciary duty in *Brandt* to insurance companies,

the Court believes that, if presented with this issue, the Missouri Supreme Court would hold that at the time the insured has turned over privileged medical records to the insurer, a special relationship exists between the parties, and based on the nature of that relationship, the insurance company owes a fiduciary duty to ensure the confidentiality of the medical records. Generally, under Missouri law, no fiduciary duty exists between an insurer and insured. *See Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 411 (Mo.Ct.App.2000); *A.G. Edwards & Sons, Inc. v. Drew*, 978 S.W.2d 386, 394 (Mo.Ct.App.1998). However, "[a] fiduciary relationship may arise as a matter of law by virtue of the parties' relationship, e.g., attorney-client, or it may arise as a result of the special circumstances of the parties' relationship where one places trust in another so that the latter gains superiority and influence over the former." *A.G. Edwards*, 978 S.W.2d at 394 (quoting *State Sec. Ins. Co. v. Frank B. Hall & Co.*, 258 Ill.App.3d 588, 196 Ill.Dec. 775, 630 N.E.2d 940, 945 (1994)). In *Gozenbach*, the Missouri Court of Appeals described the special relationship between an insurer and insured as follows:

> Turning the records over to his insurers is consistent with the retention of the privilege because the insurers, who paid a substantial part of the costs of ... hospitalization, are an integral part of the contemporary medical treatment process. Thus, [the insured's] actions are consistent with an intention to reveal confidential information only to the extent necessary to obtain treatment and later, payment or reimbursement for his hospital treatment.

*Gonzenbach*, 655 S.W.2d at 796.

When in possession of medical records shielded by the physician-patient privilege, an insurance company has a special confidential relationship with its insured-a fiduciary relationship—and from that relationship flows a duty to protect those medical records from unauthorized disclosure. To that end, the insurance company should be treated no differently than a hospital or physician—it was in possession of medical records subject to the physician-patient privilege, and by virtue of the confidential relationship with the insured, it had a fiduciary duty not to disclose them without the insured's permission or waiver.

■ Mutual of Omaha argues that it merely complied with a valid subpoena. The Court does not find this argument persuasive and does not believe that Mutual of Omaha's fiduciary duty vanished upon receipt of the subpoena. Mutual of Omaha argues that, under Kansas Statute § 60–245(e), it could have been held in contempt of court for failing to obey the subpoena. However, that particular section cited by Defendant actually reads: "[f]ailure by any person *without adequate excuse* to obey a subpoena served upon the person may be considered in contempt of the court ..." *Id.* (emphasis added). In this case, Mutual of Omaha had an adequate excuse—that compliance with the subpoena would result in the disclosure of privileged material. In fact, Section (c)(3)(A)(iii) of the same statute states that a court shall quash a subpoena when it "requires disclosure of privileged or other protected matter." Mutual of Omaha could have pursued several options to protect the confidentiality of Ingram's medical records—it could have filed a motion to quash or filed a motion for a protective order before disclosing the records. Within the subpoena itself was a statement that Mutual of Omaha could serve written objections to attorney Lysaught and if an objection was made, the records need not be produced except upon order of the court. Clearly, there was a mechanism in place for Mutual of Omaha to ensure the

912

confidentiality of Ingram's medical records and its failure to pursue any of these options is a breach of its fiduciary duty.

 Mutual of Omaha also argues that the subpoena was later upheld by the Kansas court when it denied the motion to quash. Without commenting on the propriety of the Kansas court's decision, this Court does not believe that an order entered four months after the records were released bears upon whether Missouri imposed a duty on Mutual of Omaha at the time of the release. The question before this Court is whether Mutual of Omaha breached its fiduciary duty. At the point in time when Mutual of Omaha released Ingram's records, no motion to quash had been filed (by Mutual of Omaha or any other party) and Mutual of Omaha did not attempt to obtain permission or a waiver from Ingram.

## B. Breach of Physician–Patient Privilege

 Mutual of Omaha seeks summary judgment on Ingram's claim for breach of the physician-patient privilege. The Court has been unable to find any authority, and Ingram has provided no case, which endorses the extension of the physician-patient privilege to insurance companies or in any way creates an insurer-insured privilege from the physician-patient privilege. The physician-patient privilege is codified in Mo.Rev.Stat. § 491.060(5), and relates only to a *physician's* disclosure of medical information by testimony in court or by formal discovery. This privilege should be distinguished from a fiduciary duty of confidentiality. *See Brandt,* 856 S.W.2d at 669. Given the limited nature of the physician-patient privilege, the Court believes that it should not be applied against an insurance company. Therefore, summary judgment is granted in favor of Mutual of

Omaha on Ingram's breach of physician-patient privilege claim.

## V. Conclusion

Based on the discussion above, Plaintiff's motion for summary judgment on her claim of breach of fiduciary duty is granted. Mutual of Omaha's cross-motion for summary judgment on Ingram's claim for breach of the physician-patient privilege is also granted. Remaining is the issue of Plaintiff's damages. The parties shall submit, within twenty days of the date of this order, a revised scheduling and trial order to address the issue of Plaintiff's damages.

IT IS SO ORDERED.