**STATE of Missouri ex rel. DIXON OAKS HEALTH CENTER, INC., Relator,**

v.

**The Honorable Douglas E. LONG, Jr., Judge 25th Judicial Circuit of Missouri, Respondent.**

No. 20371.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 14, 1996.

Motion for Rehearing or Transfer
Denied March 1, 1996.

Virginia L. Fry, Eric J. Jensen, Whiteaker & Wilson, Springfield, for appellant.

Howard B. Becker, Thomas, Birdsong & Clayton, Rolla, for respondent.

Harvey M. Tettlebaum, Lowell D. Pearson, Husch & Eppenberger, Jefferson City, for Amicus Curiae.

BARNEY, Judge.

*PRELIMINARY ORDER IN PROHIBITION IS QUASHED.*

Relator, Dixon Oaks Health Center, Inc., one of the defendants in the underlying case herein, seeks an order in prohibition against the Honorable Douglas Long, Jr., Respondent herein, for his refusal to quash a subpoena duces tecum relating to the production of records of Relator's nursing facility residents, which it claims are barred by the physician-patient privilege as set forth in § 491.060(5).[1] We issued a preliminary order in prohibition which we now quash, in accordance with this opinion.

In the underlying suit[2] it is alleged that L. L.,[3] is a 79 year old resident patient of Dixon Oaks Health Center, Inc., a residential care facility (hereinafter referred to as Relator). She can not walk or get out of bed on her own and relies on others to communicate, feed and care for her. She also suffers from Alzheimer's disease. N.H. is also a resident of Relator who had been admitted some three years prior to L.L. He suffers from liver disease secondary to alcohol abuse and related dementia with aggressive behavior.

In early May 1994, L. L.'s daughter, E. B., discovered a large bruise on her mother's buttocks and inner thigh. She was told by a nurse that a fall that L.L. had taken a few days before was a possible source of the injuries. Two days later, E.B. discovered while changing her mother's diaper, that she was severely bruised and swollen in the anal and genital area. Susan Hand, Relator's nursing home administrator, adhered to the explanation that a fall was responsible for the injuries. Hand informed E.B. that photographs had been taken of the injuries. E.B. was not notified of either incident when it occurred and no written report was produced.

The following day, E.B. was contacted by Relator and told that N.H. had been caught fondling her mother's genitals inside her diaper. E.B. was also told by a nurse that she had seen N.H. kissing and fondling L.L. on more than one occasion. When confronted, N.H. admitted having sex with L.L. He was arrested in Pulaski County and charged with deviate sexual assault.

On October 31, 1994, all plaintiffs[4] in the underlying suit herein filed a written complaint with the Missouri Attorney General pursuant to the Missouri Omnibus Nursing Home Act, §§ 198.003–186. (hereinafter re-

---

1. All statutory references are to RSMo.1994.

2. The Plaintiffs in the underlying suit, L.L., an individual by and through her next friend, E.B., K.L., an individual, and E.B., an individual, have filed suit in the Circuit Court of Pulaski County, Missouri, in Case Number CV595–0367CC, against Defendant DIXON MANAGEMENT, INC., a corporation, and Defendant N.H., and Defendant S.H., an individual, in nine counts, alleging negligence, violations of the Omnibus Nursing Home Act, § 198.003, et seq., RSMo, breach of contract, intentional misrepresentation, and punitive damages against Relator; battery of Plaintiff L.L. by Defendant N.H. and professional malpractice by Defendant S.H. Plaintiffs E.B. and K.L. are, respectively, the

daughter and husband of Plaintiff L.L. Defendant DIXON MANAGEMENT, INC., is a corporate entity which owns, manages and operates DIXON OAKS HEALTH CENTER, INC., (Relator herein.)

3. All Plaintiffs and Defendant, N.H. will be referred to by their initials herein to prevent possible embarrassment. No disrespect is intended.

4. The plaintiffs in the underlying suit are referred to in this opinion as "plaintiffs" though, technically, they are not parties to this prohibition proceeding. Respondent is represented by Plaintiffs' counsel and their contentions are, therefore, expressed through him.

ferred to as the Act.) § 198.093 reads as follows:

1. Any resident or former resident who is deprived of any right created by sections 198.088 and 198.090 may file a written complaint within one hundred eighty days of the alleged deprivation or injury with the office of the attorney general describing the facts surrounding the alleged deprivation. A copy of the complaint shall be sent to the Department by the Attorney General.

2. The Attorney General shall review each complaint and may initiate legal action as provided under sections 198.003 to 198.186.

3. If the Attorney General fails to initiate a legal action within sixty days of receipt of the complaint, the complainant may, within two hundred forty days of filing the complaint with the Attorney General, bring a civil action in an appropriate court against any owner, operator or the agent of any owner or operator to recover actual damages.... [And other remedies provided.]

[all references to the "Department" refer to the Department of Social Services. § 198.006(4) ].

The alleged incident occurred on or about May 10, 1994. The complaint was filed with the Attorney General on October 31, 1994. The Attorney General took no action within sixty days from receipt of the complaint and Plaintiffs, accordingly, perfected their right to proceed under the Act and initiated a civil action April 17, 1995.

Certain of Relator's nursing home records were released to Plaintiffs by the Attorney General of Missouri, which were previously obtained by the Attorney General under the provisions of § 198.093. It is alleged by Plaintiffs that these records refer to several incidences of N. H.'s sexually aggressive be-

havior. Plaintiffs have now issued a subpoena duces tecum to the Relator's custodian of records, requesting the production of certain records and documents at a deposition. The records sought to be produced are:

[A]ny and all records which relate to the following:

1. N.H., an individual, who was a patient at Dixon Oaks Health Center;

....

3. The incident alleged wherein L.L. was injured, attached [sic] raped on or about May 1994;

4. Any and all medical records relating to N.H., and any other patients or residents of Dixon Oaks Health Center;

5. Any and all medical records relating to N.H.

....

Relator moved to quash the subpoena duces tecum and the trial judge denied the motion. Relator originally contended that the subpoena requesting items 1, 3, 4 and 5 was: (1) violative of the physician-patient privilege of N.H. and other patients; (2) violated the attorney client privilege as per § 491.060(3); and (3) violated the work product privilege with regard to reports prepared in anticipation of litigation. Additionally, Relator complained of the breadth and scope of the subpoena as being "over broad" and requesting "production of both protected materials in addition to non-protected materials." However, in Relator's brief, it has abandoned all of those contentions except that the subpoena duces tecum requires the production of innocent patients' medical records as well as those of N.H., contrary to the physician-patient privilege under § 491.060(5). We do not consider any issues which have been abandoned or waived by the failure to raise them.[5]

---

**5.** Relator raises no issue concerning Plaintiffs' admission, in their brief, that they already have the records being sought. Likewise, no issue is raised concerning the effect of § 198.088, which reads, in pertinent part, as follows:

1. Every facility in accordance with the rules applying to each particular type of facility, shall ensure that:

....

(6) Each resident admitted to the facility:

....

(g) Is free from mental and physical abuse ...

(h) Is ensured confidential treatment of all information contained in his records ... and his written consent shall be required for the release of information to persons not otherwise authorized under law to receive it;

■ Additionally, Relator's only point relied on is premised on the physician-patient privilege. "The questions for decision on appeal are those stated in the Points Relied On. A question not there presented will be considered abandoned. Issues to which an appellant alludes only in the argument portion of the brief are not presented for review." *Greene County Concerned Citizens v. Board,* 873 S.W.2d 246 (Mo.App.1994) (citations omitted).

■ At common law there were no medical privileges. *Brandt v. Medical Defense Associates,* 856 S.W.2d 667, 669 (Mo.1993). "Claims of privilege present an exception to the general rules of evidence which provide that all evidence, material, relevant and competent to a judicial proceeding shall be revealed if called for. As such, they are carefully scrutinized." *State v. Beatty,* 770 S.W.2d 387, 391 (Mo.App.1989). The physician-patient privilege in Missouri is created by § 491.060(5) which specifically states:

The following persons shall be incompetent to testify:

(5) A physician licensed under Chapter 334, RSMo ... concerning any information which he may have acquired from any patient while attending him in professional character, and which information was necessary to enable him to prescribe and provide treatment for such patient as a physician....

■ The physician-patient privilege applies both in civil and in criminal cases.

*Beatty, Id.* at 391, and relates to physicians, *State v. Shirley,* 731 S.W.2d 49, 52 (Mo.App. 1987), and nurses when acting under the direction of a physician or assisting him in treating his patient. *Id.* at 53. The privilege also applies to medical records. *Leritz v. Koehr,* 844 S.W.2d 583, 584 (Mo.App.1993). The privilege can only be waived by the patient and the doctor must protect the patient by asserting the privilege when applicable. *St. Louis Little Rock Hosp., Inc., v. Gaertner,* 682 S.W.2d 146, 151 (Mo.App. 1984). More recently the Missouri Supreme Court has determined that while § 491.060(5) creates only a testimonial privilege relating to the disclosure of confidential medical information by testimony in court or by formal discovery, there also exists a fiduciary duty of confidentiality not to disclose any medical information received in connection with the treatment of the patient. *Brandt,* 856 S.W.2d at 669.

■ However, this medical privilege is *not* absolute and has been modified or made inapplicable by the legislature in certain types of cases.[6]

Missouri courts have also held that the physician-patient privilege does not prevent disclosure of information that is unnecessary for treatment such as the name of the patient or the time or place of treatment. *State ex rel. Husgen v. Stussie,* 617 S.W.2d 414, 415–16 (Mo.App.1981); *Gonzenbach v. Lasky,* 641 S.W.2d 430, 432 (Mo.App.1982) [furnishing identity of health care provider who had

---

(i) Is treated with consideration, respect and full recognition of his dignity and individuality....

Therefore, we do not consider any of those issues.

**6.** 1) [T]reating physician is immune from civil liability when making report that patient was treated for gunshot wound, § 578.353; 2) treating physician may report to the highway patrol a patient who appears to be intoxicated for injuries sustained in an automobile accident, § 334.265; 3) physician may give the Department of Health information concerning a patient for epidemiological studies to safeguard the health of the citizens of Missouri, § 192.067; 4) a physician may report to the Department of Health children who may have been exposed to a controlled substance, § 191.737, or situations involving child abuse or neglect, § 210.140; 5) certain civil detention proceedings, § 632.425; 6) pro-

ceedings in termination of parental rights, § 211.459.4; 7) notification of parents for certain treatment provided minors, § 431.062; 8) proceedings under the Uniform Parentage Act, § 210.832.3; 9) worker's compensation cases, § 287.140.6; 10) certain criminal trials, § 577.037; 11) pleading not guilty by reason of mental disease or defect, § 552.020, § 522.030. [This list is not all-inclusive.]

A patient also cannot claim the privilege while pursuing a claim or defense in which his own physical, mental or emotional condition has been placed in issue by the patient, because the privilege is considered waived. See *State ex rel. McNutt v. Keet,* 432 S.W.2d 597, 601 (Mo. banc 1968); *State ex rel. Rowland v. O'Toole,* 884 S.W.2d 100, 103 (Mo.App.1994). See, also, Rule 60.01, Missouri Rules of Civil Procedure (1995).

treated patient.] In *Price v. Price*, 311 S.W.2d 341, 349 (Mo.App.1958), the court stated that the privilege did not attach to testimony that a patient had been involuntarily committed to the mental hospital where the psychiatrist was employed. It does not protect against the disclosure of information acquired in the course of physician-patient relationship which was not for the purpose of prescribing or providing treatment. Thus in *State v. Lewis*, 735 S.W.2d 183, 187 (Mo.App.1987), statements made by defendant in response to doctor's questions in which defendant stated that he had been the driver, not the passenger, in a vehicle involved in a fatal accident were not encompassed within the privilege because defendant's medical treatment did not depend on the answer. In *State ex rel. Hayter v. Griffin*, 785 S.W.2d 590, 595–96 (Mo.App.1990), there was no privilege which attached for information acquired during a physical examination of a truck driver which had been conducted "not for the purpose of prescription or treatment, but rather for the purpose of meeting the federal [motor carrier safety] regulations." The privilege is likewise inapplicable in will contests. *Thompson v. Ish*, 99 Mo. 160, 12 S.W. 510, 514 (1889); *See also, Spurr v. Spurr*, 285 Mo. 163, 226 S.W. 35, 40 (1920).

In *Barry v. State*, 44 Misc.2d 568, 254 N.Y.S.2d 306 (1964), a hospital patient assaulted another patient. The alleged victim sought medical records concerning propensities of the alleged assailant and all hospital records relating to his history and treatment. The court held that the "physicians and nurses, therefore, may not be examined as to the patient's propensities ... [T]hey may be examined as to information contained in the hospital records gained by observation and not through professional knowledge." *Id.*, 254 N.Y.S.2d at 308–09. In *Westphal v. State*, 191 Misc. 688, 79 N.Y.S.2d 634 (1948), a mental patient escaped confinement and assaulted the plaintiff. In the suit that followed the court ruled that "A physician is not prohibited from testifying to such ordinary incidents and facts as are plain to the observation of anyone without a professional knowledge. Information obtained by the medical directors in a clerical or supervisory capacity, as distinguished from their professional character as physicians, does not come within the [medical privilege] ban."

In *State v. Henderson*, 824 S.W.2d 445 (Mo.App.1991), the court held that there was no violation of the physician-patient privilege as pertaining to a nurse-counselor's testifying in court reciting defendant's gratuitous statements that he was going to kill his wife. The court reasoned that at the time of defendant's remarks to the nurse(s), the nurses were not working under the direction of a doctor or psychologist and the defendant was not then receiving treatment.

It has been recognized by Missouri courts that the physician-patient privilege may give way to some extent where there is a stronger countervailing societal interest. *Brandt*, 856 S.W.2d at 671. For instance, it has been held that the public interest is served in assuring proper medical and hospital care, by allowing the disclosure of patient records to a hospital review committee to assess the qualifications of a staff physician and that this did not constitute a violation of the physician-patient privilege. *Klinge v. Lutheran Medical Center of St. Louis*, 518 S.W.2d 157 (Mo.App.1974).

In *State ex rel. Lester E. Cox Med. Ctr. v. Keet*, 678 S.W.2d 813 (Mo. banc 1984), a patient died from a post-operative infection contracted while at the hospital. Plaintiffs there sought "medical records of any patient [at the hospital] who had developed a bacteriological infection and/or shock subsequent to surgery and identification of and disclosure of the reason for hospitalization of any patient in the same room or ward with the decedent." *Id.* at 814. The hospital argued that disclosure of the records would violate the physician-patient privilege because information regarding treatment would be revealed. The court went on to approve an *in camera* review of patient records in redacted form. "The circumstances, facts and interests of justice determine the applicability of the physician-patient privilege to a particular situation." *Id.* at 815. The Court went on to state:

It is apparent that information contained in the redacted records of other patients

may be relevant to plaintiff's malpractice claims and the search for truth demands that such records be examined by the trial court with a careful eye to protection of the non-party patients, such as they are entitled to by the physician-patient privilege, from humiliation, embarrassment or disgrace.

In *Beatty,* 770 S.W.2d at 391, this Court, citing *Cox,* reiterated that the applicability of the physician-patient privilege to a particular situation is determined by the "circumstances, facts and interests of justice" and went on to rule that a treating psychiatrist's telephone call to anonymously report his patient's involvement in a crime was not "testimony at trial" and did not violate the statutory physician-patient privilege. "The possibility of other exceptions is suggested by the frequent statements of Missouri courts that the applicability of the privilege to a given situation depends on the circumstances, the facts, and the interests of justice." See, William A. Schroeder, Medical Privileges Under Missouri Law, 46 Mo. Bar J, 305–14 (1990). Consistent with prior case law holdings, given the facts and circumstances of the allegations of this case, involving the physical safety of nursing home patients, the interests of justice authorizes a very limited exception to the physician-patient privilege.

■ The general rule of discovery is that the parties may obtain information regarding any matter relevant to the subject matter involved in the pending action so long as the matter is not privileged. Rule 56.01(b)(1), Missouri Rules of Civil Procedure (1995). The term "relevant" is broadly defined to include material "reasonably calculated to lead to the discovery of admissible evidence." *Id.; State ex rel. Stecher v. Dowd,* 912 S.W.2d 462, 464 (Mo. banc 1995).

For sake of simplification, we will combine discovery items one, four and five and make the following comments and ruling:

■ The allegations of the original petition are that N.H. has engaged in episodic physical and/or sexual assault of patients. Some of these assaults may have taken place in plain view of both professional and/or non-professional staff members of the Relator;

other alleged assaults may have taken place in private. In either event, as to N.H., there is no indication that these alleged acts have any immediate relationship to medical treatment. This type of activity is not protected from disclosure by the physician-patient privilege and those records of Relator describing N.H.'s involvement in any type of assault, including the sex of any victim, and the time and location of the event, are discoverable. Therefore, save for the names of any of the alleged victims, which are to be redacted, Relator must produce at the deposition, records describing the existence or circumstances of physical or sexual assault by N.H.

We further rule that Plaintiffs' subpoenaed item three, involving the records [medical or otherwise] relating to "the incident alleged wherein L.L. was injured, attached (sic) raped on or about May 1994", is to be produced at depositions.

We further rule that when requested by either of the parties herein, a judge shall conduct an *in camera* inspection of subpoenaed matters and records for compliance with the limitations and restrictions set out herein.

The preliminary order in prohibition heretofore issued is quashed subject to the procedures outlined herein.

MONTGOMERY, P.J., and GARRISON, J., concur.